THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:19-cv-00330-MR

| | |
|---|---|
| JEFFERY KEVIN HOYLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 11] and the Defendant's Motion for Summary Judgment [Doc. 13].

**I.      BACKGROUND**

On May 7, 2015, the Plaintiff, Jeffery Kevin Hoyle ("Plaintiff"), filed an application for disability and disability insurance benefits under Title II of the Social Security Act (the "Act") and an application for supplemental security income under Title XVI of the Act, alleging in both applications an onset date of April 28, 2015. [Transcript ("T.") at 24]. The Plaintiff's claims were initially denied on November 13, 2015, and again denied upon reconsideration on April 7, 2016. [Id.]. On the Plaintiff's request, a hearing was held on

September 10, 2018, before an Administrative Law Judge ("ALJ"). [Id.]. On September 18, 2018, the ALJ issued a written decision denying the Plaintiff benefits. [Id. at 21, 25].

On July 26, 2019, the Appeals Council denied the Plaintiff's request for review thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 7]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When reviewing a Social Security Administration disability determination, a reviewing court must 'uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (quoting Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). Substantial evidence "consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson, 810 F.3d at 207 (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017

WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant

4

does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. §§ 404.1546(c), 404.943(c), 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); Mascio, 780 F.3d at 635. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five,

the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. 20 C.F.R. § 416.920(a)(4)(v); Mascio, 780 F.3d at 635; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since April 28, 2015, the alleged onset date, and that the Plaintiff met the insured status requirements through December 31, 2019. [T. at 26]. At step two, the ALJ found that the Plaintiff has the following severe impairments: "status-post cerebrovascular accident, vision deficits, mild neurocognitive disorder and major depressive disorder with anxious distress." [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically

6

equals the Listings. [Id. at 27. The ALJ then determined that the Plaintiff, notwithstanding his impairments, had the RFC:

> [T]o perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he cannot climb ladders, ropes, or scaffolds, and he can perform other postural activity frequently. The [Plaintiff] is limited to occasional overhead reaching with the left upper extremity, and he is limited to frequent handling and fingering with the left upper extremity. The [Plaintiff] should avoid even moderate exposure to hazards, and he is limited to occasional use of foot controls with both lower extremities. The [Plaintiff] can perform simple, routine, repetitive work that involves no more than occasional interaction with coworkers, supervisors, and the public. The claimant should work with things rather than people.

[Id. at 28].

At step four, the ALJ identified the Plaintiff's past relevant work as a tractor trailer driver and determined that he "is unable to perform any past relevant work." [Id. 37]. At step five the ALJ concluded that based on the Plaintiff's age, education, work experience, and RFC, the Plaintiff is able to perform other jobs existing in significant numbers in the national economy, including machine feeder, industrial cleaner, and laundry worker. [Id. at 38]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Act from April 28, 2016 through the date of the opinion. [Id. at 39].

7

## V. DISCUSSION[1]

As his sole assignment of error, the Plaintiff asserts that the ALJ failed to provide adequate "reasons that are supported by substantial evidence for the weight given to [the] medical opinions" of Dr. Fiore and Dr. Appollo. [Doc. 12 at 7]. The Plaintiff contends that, as a result, the ALJ did not build "an accurate and logical bridge between the evidence and his conclusions." [Id.]

In making a disability determination, the ALJ consider each "medical opinion" in the plaintiff's record and include a weight given to each opinion regardless of the source of the opinion. Woods v. Berryhill, 888 F.3d 686, 695 (4th Cir. 2018); 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ's determination "as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,'. . . or has failed to give a sufficient reason for the weight afforded a particular opinion." Dunn v. Colvin, 607 Fed. App'x 264, 267 (4th Cir. 2015) (internal citations omitted).

"An ALJ must include a narrative discussion describing how the evidence supports his explanation of the varying degrees of weight he gave to differing opinions concerning the claimant's conditions and limitations."

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

8

Woods, 888 F.3d at 695 (alteration and internal quotation marks omitted); see Monroe, 826 F.3d at 190. When evaluating and weighing the medical opinions, the ALJ should consider several factors including (1) the examining relationship, (2) the treatment relationship, including the length of the relationship and the frequency of examination and the nature and extent of the relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416(c)(1)-(6). Generally, more weight will be given to an opinion of a medical source who has examined the Plaintiff than to a non-examining source. 20 C.F.R. § 404.1527(c). If the ALJ does not provide reasons "supported by citations to the record evidence, for rejecting the opinions" then the reviewing court cannot find that the conclusion regarding the weight of the medical opinion was supported by substantial evidence. See Helms v. Berryhill, 362 F. Supp. 3d 294, 302 (W.D.N.C. 2019).

Both Dr. Fiore and Dr. Appollo examined the Plaintiff on behalf of the Agency. On October 12, 2015, Dr. Fiore administered a comprehensive clinical psychological evaluation and the Weschler Memory Scale IV Edition. [T. at 558]. Dr. Fiore found, among other things, that the Plaintiff had slight issues in his orientation, poor immediate recall, reduced concentration, poor recent memory, fair remote memory, adequate judgment, and had borderline

to low average intelligence. [Id. at 561]. After administering the Weschler Memory Scale, Dr. Fiore stated that the Plaintiff was in the fifth percentile in the delayed memory index score. [Id. at 562]. Dr. Fiore concluded that the exam results were "consistent with impairments in concentration, immediate memory and recent memory." [Id. at 563]. He found that the Plaintiff would "have severe difficulty understanding and following simple [and complex] work-related instructions" and suspected that the Plaintiff "would become quickly overwhelmed—both emotionally and cognitively—on a typical work routine or facing typical workplace stressors." [Id.].

Dr. Appollo examined the Plaintiff on March 17, 2016, and administered the WRAT 4 and the Wechsler Adult Intelligence Scale IV. [Id. at 581]. Dr. Appollo found that the Plaintiff had a working memory in the fourth percentile, a full-scale IQ in the third percentile, and a "[g]eneral [a]bility in the fifth percentile, all of which were in the "Borderline range." [Id. at 586]. Dr. Appollo found that the Plaintiff "would have significant problems in the ability to tolerate stress and pressure associated with day to day work activity." [Id. at 587]. Dr. Appollo also found that the Plaintiff has a "Borderline ability to understand, retain and follow instructions," a "below average ability to sustain attention to perform simple repetitive tasks," and a below average working memory. [Id.].

The ALJ gave "little weight" to the opinions of examining doctors Appollo and Fiore, regarding the Plaintiff's "decreased stress tolerance" finding the opinions were not supported by "the providers' objective findings or the other evidence of record." [T. at 36]. Specifically, the ALJ noted that:

> [T]he claimant did not exhibit signs of significantly decreased stress tolerance, such as psychosis, mania, profound psychomotor retardation or agitation, or emotional lability. Dr. Appollo's assessment of "borderline" abilities is poorly defined in terms of the functional impact such limitations would have on the claimant's ability to perform work activities, and thus this is given little weight. The provider's opinion that the claimant had a below average ability to sustain attention to perform simple, repetitive tasks is given little weight, as the claimant did not consistently report or demonstrate significant concentration deficits. Further, the claimant's primary complaint was memory problems, yet he was able to recall past events, and did not demonstrate deficits that would preclude the performance of simple, routine, repetitive tasks. For similar reasons, Dr. Fiore's assignment of severe limitations is given little weight, as the claimant's presentation and performance during subsequent psychological evaluations was not consistent with such severe limitations in function.

[T. at 36-37].

This explanation by the ALJ is insufficient. The explanation does not provide any specific reasons with citations to the record evidence in his decision for the weight he ascribed Dr. Appollo and Dr. Fiore's opinions. For example, with respect to the decrease in stress tolerance, the ALJ merely provided a litany of conditions from which Plaintiff does *not* suffer, rather than citing to specific evidence in the record. There is no explanation as to how

11

the ALJ's determination that the Plaintiff does not suffer from the listed conditions supports the decision to assign little weight to Dr. Appollo and Dr. Fiore's opinions. See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (finding error in the ALJ's failure to "indicate how the results he cited were relevant").

The fact that the Plaintiff did not consistently report or demonstrate attention problems also does not sufficiently explain the weight given to Dr. Appollo and Dr. Fiore's opinions. "Because symptoms of mental illness may wax and wane over the course of treatment, the fact that [the plaintiff]" did not consistently exhibit certain symptoms is "not inconsistent with the conclusion that [he] is unable to work." Testamark v. Berryhill, 736 Fed. App'x 395, 398-99 (4th Cir. 2018). Furthermore, although the ALJ states Dr. Appollo's assessment in terms of "borderline" abilities was "poorly defined" the ALJ gave great weight to Dr. Laney's opinion and Dr. Laney also used the word "borderline" to interpret the Plaintiff's abilities. [T. at 600].

The ALJ's explanation that Dr. Fiore's and Dr. Appollo's opinions would be discounted because the Plaintiff "was able to recall past events, and did not demonstrate deficits that would preclude the performance of simple, routine, repetitive tasks" is conclusory and does not provide a clear reason for why the opinions were given little weight. The statement that the Plaintiff

did not "demonstrate deficits that would preclude the performance of simple, routine, repetitive tasks" is a conclusory statement based on the ALJ's own conclusion that the Plaintiff can perform simple, routine, repetitive tasks. See Mascio, 780 F.3d at 639 (finding the ALJ erred by concluding that the plaintiff's statements concerning the effects of the plaintiff's symptoms were not credible because they were inconsistent with the ALJ's assessment of what the plaintiff could do). Dr. Appollo and Dr. Fiore both concluded that the Plaintiff did demonstrate deficits that would preclude the Plaintiff from the performance of simple, routine, repetitive tasks based on tests and evaluations and it is unclear, based on the record, why the ALJ concluded that this was inconsistent with the evidence.

Finally, the ALJ concluded that the evidence of Dr. Fiore and Dr. Appollo is contradicted by the more recent evaluations of the Plaintiff. [T. at 36]. This reasoning is also conclusory and does not provide the Court with a basis for adequate review. An examination of the record does not demonstrate any obvious contradictions in the evidence presented in Dr. Appollo's and Dr. Fiore's opinions and the evidence in subsequent evaluations. The opinion of Dr. Laney—to which the ALJ gave "great weight"—determined that the Plaintiff had an impairment and that the Plaintiff would need to use "compensatory memory strategies" in order to help him

13

testify at his own trial.[2] [T. at 602]. Such a finding, however, does not indicate that the Plaintiff does not have problems with his memory.

A reviewing court cannot be "left to guess about how the ALJ arrived at his conclusion." Mascio, 780 F.3d at 637. It is up to the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189. Without a more specific explanation of the ALJ's reasons for the weight he assigned these medical opinions the Court cannot undertake meaningful substantial evidence review, and remand is required. Id. at 191.

## VI. CONCLUSION

The Court expresses no opinion as to whether the ALJ is correct in the determination that the Plaintiff is not disabled or that the opinions of Dr. Appollo and Dr. Fiore are entitled to little weight. However, the reviewing Court cannot be left to guess as to how the ALJ arrived at his conclusions.

---

[2] Dr. Laney examined the Plaintiff in order to determine whether he was competent to stand trial. [T. at 590]. While Dr. Laney found that the Plaintiff was competent, she also found the Plaintiff was "significantly impaired." [Id. at 600]. Dr. Laney also determined that the Plaintiff's "ability to testify" was "more concerning" and that the Plaintiff would "require[] prompting to elicit adequate recall." [Id. at 602]. However, the ALJ did not include any limitation in the RFC to address the deficits in the Plaintiff's memory. Furthermore, both the ALJ and Dr. Laney concluded that the score was "invalid" because the Plaintiff was not wearing his glasses, but neither Dr. Laney nor the ALJ then explain whether the test itself is valid without those sections or that those sections would have shown greater capabilities if the Plaintiff had his glasses. [Id. at 36; 600-01]. The Plaintiff does not fully raise these concerns, so the Court leaves these issues to the review process on remand.

14

The Plaintiff is entitled to have all medical opinions properly considered and have the ALJ explain how he arrived at his conclusion as to the weight given to each opinion. On remand the ALJ should provide a record that gives clear reasons for the weight assigned to each opinion based on citations to the record rather than conclusions.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 11] is **GRANTED**, and that the Defendant's Motion for Summary Judgment [Doc. 13] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further proceedings consistent with this decision.

**IT IS SO ORDERED.**

Signed: September 28, 2020

Martin Reidinger
Chief United States District Judge